UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-62202-STRAUSS

**ANGEL RICHITELLI,**

    Plaintiff,

v.

**UNITED STATES OF AMERICA,**

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** came before the Court upon Defendant's Motion for Summary Judgment or, Alternatively, Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Motion") [DE 39]. I have reviewed the Motion, the Response [DE 42] and Reply [DE 49] thereto, all other summary judgment materials, and all other pertinent portions of the record. For the reasons discussed herein, the Motion [DE 39] will be **GRANTED**.

## BACKGROUND

On August 2, 2019, Plaintiff visited a United States Postal Service ("USPS") post office location at 2350 N. University Drive in Pembroke Pines, Florida ("Premises") around 3:00 p.m. Defendant's Statement of Material Facts ("SMF") [DE 40] ¶ 1 (undisputed); Deposition of Angel Richitelli ("PL Depo.") [DE 40-3] at 25. In the exterior parking lot of the Premises, there is a typical, blue, metal mail collection box ("Collection Box") located on a concrete and grass raised median. SMF ¶ 2 (undisputed). The Collection Box has no electrical components and no purposeful connection to any source of electricity. *Id.* ¶ 19 (undisputed). It is the drive-up type that postal customers can pull up to in their vehicles and place mail into without exiting their

vehicles. *Id.* ¶ 4 (undisputed). It does not have a handle; rather, it has a slot into which mail can be placed. *Id.* ¶ 5 (undisputed). Although the Collection Box does not have any electrical components, there is a light pole ("Pole 8") on the same raised median. *Id.* ¶ 22 (undisputed).

When Plaintiff visited the Premises on August 2, 2019, she drove up to the Collection Box, rolled down her window, and – with her car in park but still running – reached through the open window to place mail into the slot of the Collection Box. *Id.* ¶¶ 6-7 (undisputed). In doing so, a portion of three fingers on her left hand touched the Collection Box. *Id.* ¶¶ 6, 8 (undisputed). When Plaintiff touched the Collection Box, she felt an electric shock ("Incident"), which she estimates lasted 15-30 seconds. *Id.* ¶¶ 8-9 (undisputed). However, she did not lose consciousness as a result of the Incident, and she was able to roll up her window "perfectly fine" following the Incident. *Id.* ¶¶ 10-11 (undisputed). Also, Plaintiff's vehicle did not turn off from the Incident, and her vehicle – including all of its electronic components – was working fine after the Incident. *Id.* ¶ 11 (undisputed). Aside from Plaintiff, nobody witnessed the Incident. *Id.* ¶ 12 (undisputed).

Following the Incident, Plaintiff called her mother, and immediately after the call, she drove her car into a parking space at the Premises, went inside the building, and reported the Incident to USPS employees. *Id.* ¶ 13 (undisputed). Plaintiff was able to walk from her car into the Premises without issue. *Id.* ¶ 14 (undisputed). After reporting the Incident, Plaintiff drove herself across the street to Memorial Pembroke Hospital. *Id.* ¶ 15 (undisputed). She spent approximately 2 hours at the hospital but was not admitted, and she did not have any complaints of back or neck pain while at the hospital. *Id.* ¶ 16 (undisputed). After leaving the hospital, Plaintiff drove herself home. *Id.* ¶ 17 (undisputed).

When Plaintiff reported the Incident to USPS, USPS employees conducted an inspection of the Collection Box and determined that it was not electrified. *See id.* ¶¶ 28-29;[1] *see also* Declaration of Jim A. Walker ("Walker Decl.") [DE 40-6] ¶¶ 12, 14. The employees who inspected the Collection Box did not discover any issues with it, including any issues suggesting that it posed a danger to anyone. SMF ¶¶ 28-29; Walker Decl. ¶ 14. Moreover, on the day of the Incident (like other weekdays), USPS employees retrieved mail from the Collection Box around 11:00 a.m. (before the Incident) and 5:00 p.m. (after the Incident). SMF ¶ 31 (undisputed). They were not shocked in doing so. *Id.* Additionally, aside from the Incident, nobody else has reported an electronic shock from the Collection Box – either before or after the date of the Incident. *Id.* ¶ 33 (undisputed). And this particular Collection Box is generally used by 50-100 customers throughout the day. *Id.* ¶ 32;[2] Walker Decl. ¶ 17. Moreover, the customer service manager at the Premises on the date of the Incident has never heard of someone being shocked by a USPS collection box (aside from Plaintiff's report of the Incident). *Compare* SMF ¶¶ 34-35, *with* Resp. SMF ¶¶ 34-35; *see also* Walker Decl. ¶ 13.

As a result of the Incident, Plaintiff asserts that she has suffered multiple injuries. *See* SMF ¶ 18 (undisputed). It is undisputed that her "injuries related to the [I]ncident are not readily

---

[1] Plaintiff's response to the SMF indicates that she disputes paragraph 29 of the SMF (but not paragraph 28). However, Plaintiff has failed to point to evidence sufficient to establish a genuine dispute at to paragraph 29 of the SMF. She merely states that she "was not made aware of the inspection and disputes the results." Plaintiff's Statement of Material Facts in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment ("Resp. SMF") [DE 44] ¶ 29. In support of the foregoing statement, all Plaintiff points to is deposition testimony from an expert she seeks to introduce in which the expert testified that he does not have any documentation regarding the inspection of the Collection Box and that he does not know what the results of the inspection were. *See* Deposition of Steven H. Kahn ("Kahn Depo.") [DE 40-4] at 239.

[2] In response to paragraph 32 of the SMF, Plaintiff simply responds "[d]isputed, speculation." But Plaintiff points to no evidence to support her denial of paragraph 32 of the SMF, and paragraph 32 does not appear to be based on speculation.

observable." Joint Pretrial Stipulation [DE 45] at 3. At any rate, due to the Incident and the injuries Plaintiff asserts she has suffered as a result, Plaintiff brings a negligence/premises liability claim in this case pursuant to the Federal Tort Claims Act ("FTCA").

## **LEGAL STANDARD**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) (citing *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (internal quotation marks omitted) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, it is the moving party's "burden to demonstrate the basis for its motion, and [it] must identify the portions of the record 'which it believes demonstrates the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The movant may meet this burden by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.* (citing *Celotex*, 477 U.S. at 322-23). *See also Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (The movant may satisfy its burden "by 'showing' or 'pointing out' to the Court that there is an absence of evidence to support the non-moving party's case." (citing *Celotex*, 477 U.S. at 325)). Provided that the moving party meets its burden, the burden then shifts to the non-moving party to show that a genuine issue of material fact exists. *Hornsby-Culpepper*, 906 F.3d at 1311-12.

To establish a dispute of fact sufficient to avoid the entry of summary judgment, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *A.L. ex rel. D.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1289 (11th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "However, a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing *Anderson*, 477 U.S. 242). Nevertheless, courts "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted). Moreover, all reasonable doubts regarding the facts must be resolved in favor of the non-moving party. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation omitted).

## ANALYSIS

### A. FTCA & SUBJECT MATTER JURISDICTION

"It is well settled that the United States, as a sovereign entity, is immune from suit unless it consents to be sued." *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015) (citing *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1188 (11th Cir. 2011)). "The FTCA waives the United States' sovereign immunity from suit in federal courts for its employees' negligence." *Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1157 (11th Cir. 2020) (citing 28 U.S.C. § 1346(b)). That waiver applies "to tort claims arising out of activities of [USPS]." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 484 (2006) (quoting 39 U.S.C. § 409(c)). Congress, however, has carved out certain exceptions to the waiver under the FTCA. *Foster Logging*, 973 F.3d at 1157. Two exceptions include the discretionary-function exception and independent-

contractor exception. *See id.* (discussing discretionary-function exception); *Phillips v. United States*, 956 F.2d 1071, 1077 (11th Cir. 1992) (discussing independent-contractor exception); *see also United States v. Orleans*, 425 U.S. 807, 814 (1976). These exceptions implicate the Court's subject matter jurisdiction.[3]

In the Motion, Defendant indicates that its request for dismissal based on lack of subject matter jurisdiction is only brought in the alternative to its request for summary judgment on the merits. However, a court is obligated to ensure that subject matter jurisdiction exists *before* considering the merits. *See United States v. Meyer*, 50 F.4th 23, 31 (11th Cir. 2022) ("[A] federal court cannot address the merits of a dispute unless it satisfies itself that subject-matter jurisdiction exists."). Here, Defendant's subject matter jurisdiction arguments are conditional arguments. Specifically, Defendant argues that the discretionary-function exception applies "to the extent Plaintiff seeks to prove that USPS employees were somehow negligent *in placing* the collection box too near to Pole 8." [DE 39] at 14. But Plaintiff does not appear to be making any such argument. With respect to the independent-contractor exception, Defendant seems to contend that the exception applies to the extent Plaintiff is alleging negligence stemming from repairs that an independent contractor made to Pole 8. *See* [DE 39] at 13-14. However, Plaintiff appears to be alleging negligence more broadly based on USPS's alleged failure to use ordinary care to maintain

---

[3] *See Zelaya*, 781 F.3d at 1322 ("If there is no specific waiver of sovereign immunity as to a particular claim filed against the Government, the court lacks subject matter jurisdiction over the suit." (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475-76 (1994))); *id.* ("[W]hen an exception applies to neutralize what would otherwise be a waiver of immunity, a court will lack subject matter jurisdiction over the action." (citing *JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C.*, 224 F.3d 1260, 1263-64 (11th Cir. 2000))); *Simpson v. Holder*, 184 F. App'x 904, 909 (11th Cir. 2006) ("Whether the LRMC medical staff are government employees or independent contractors affects both subject matter jurisdiction under the FTCA *and* the merits of the FTCA claim." (citations omitted)).

the Premises in a reasonably safe condition, not negligence limited to the work completed by the independent contractor. Thus, the independent contractor exception is not implicated either.

### B. MERITS

Turning to the merits, Florida law applies to Plaintiff's claim in this case. *See Stone v. United States*, 373 F.3d 1129, 1130 (11th Cir. 2004) ("As the alleged tort here occurred in Florida, Florida tort law applies."); *Creekmore v. United States*, 905 F.2d 1508, 1510 (11th Cir. 1990) ("The [FTCA] requires us to apply state law to determine the substantive liability of the United States."); *O'Donnell v. United States*, 736 F. App'x 828, 831 (11th Cir. 2018) ("The substantive law of Florida determines the liability of the United States under the FTCA because the incident in question occurred in Broward County, Florida.").

Under Florida law, a plaintiff must establish the following elements to prevail on a negligence claim:

> 1. A duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks.
>
> 2. A failure on the defendant's part to conform to the standard required: a breach of the duty. . . .
>
> 3. A reasonably close causal connection between the conduct and the resulting injury. This is what is commonly known as "legal cause," or "proximate cause," and which includes the notion of cause in fact.
>
> 4. Actual loss or damage. . . .

*O'Donnell*, 736 F. App'x at 831 (quoting *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1227 (Fla. 2010)); *see also Stone*, 373 F.3d at 1130 ("To state a claim for negligence under Florida law, a plaintiff must allege that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages." (citation omitted)). "A premises liability claim is a negligence claim with the added elements of *possession/control* of

the premises, and notice of the dangerous condition." *J.L. Prop. Owners Ass'n, Inc. v. Schnurr*, 336 So. 3d 291, 297 (Fla. 4th DCA 2022) (quoting *Oliver v. Winn-Dixie Stores, Inc.*, 291 So. 3d 126, 128 (Fla. 4th DCA 2020)); *see also Dudowicz v. Pearl on 63 Main, Ltd.*, 326 So. 3d 715, 719 (Fla. 1st DCA 2021) ("In premises liability cases, the plaintiff must show the defendant had actual or constructive notice of the dangerous condition on its premises, the defendant owed a duty to protect the plaintiff from the dangerous condition, the defendant breached that duty, there was a causal connection between the defendant's breach and the plaintiff's fall, and the plaintiff suffered damages as a result." (citing *Oliver*, 291 So. 3d at 128-29)). Here, Defendant contends that it is entitled to summary judgment because Plaintiff cannot establish two essential elements of her claim: notice and causation. I agree that Plaintiff cannot establish actual or constructive notice of the dangerous condition.[4]

In the Motion, Defendant correctly points out that there is an absence of evidence to satisfy the notice element of Plaintiff's claim. "The plaintiff bears the burden of proving that the defendant was negligent, and to that end, the plaintiff must generally prove that the owner of the premises had actual or constructive notice *of the dangerous condition*." *Ugaz v. Am. Airlines, Inc.*, 576 F. Supp. 2d 1354, 1368 (S.D. Fla. 2008) (quoting *Lester's Diner II, Inc. v. Gilliam*, 788 So. 2d 283, 285 (Fla. 4th DCA 2000)) (emphasis added). "A landowner is not an insurer of his business invitee's safety, and the mere occurrence of an accident does not give rise to an inference of negligence." *St. Joseph's Hosp. v. Cowart*, 891 So. 2d 1039, 1041 (Fla. 2d DCA 2004) (citing *Cassel v. Price*, 396 So. 2d 258, 264 (Fla. 1st DCA 1981)). "The landowner's constructive notice of a dangerous condition may be inferred from either '1) the amount of time [the dangerous

---

[4] Because Defendant is entitled to summary judgment for this reason alone, I do not reach Defendant's causation arguments.

condition existed], or 2) the fact that the condition occurred with such frequency that the owner should have known of its existence.'" *Thompson v. Poinciana Place Condo. Ass'n, Inc.*, 729 So. 2d 457, 458 (Fla. 4th DCA 1999) (quoting *Schaap v. Publix Supermkts., Inc.*, 579 So. 2d 831, 834 (Fla. 1st DCA 1991)); *see also Khorran v. Harbor Freight Tools USA, Inc.*, 251 So. 3d 962, 965 (Fla. 3d DCA 2018) ("Constructive knowledge may be inferred if the dangerous condition existed for such a length of time that in the exercise of ordinary care, the premises owner should have known of it and taken action to remedy it." (citing *Grimes v. Family Dollar Stores of Fla., Inc.*, 194 So. 3d 424, 427-28 (Fla. 3d DCA 2016))); *Freeman v. BellSouth Telecomms., Inc.*, 954 So. 2d 45, 46-47 (Fla. 1st DCA 2007) ("Constructive knowledge may be proven by circumstantial evidence showing 'defects which have been in existence so long that they could have been discovered by the exercise of reasonable care, and repaired.'" (quoting *City of Jacksonville v. Foster*, 41 So. 2d 548, 549 (Fla. 1949))).

As an initial matter, the Amended Complaint does not specifically identify the alleged *dangerous condition*, though it implies that it was the Collection Box, which it describes as the "wet mail box." *See* [DE 7] ¶¶ 15-19. But there is, at most, a scintilla of evidence to show the Collection Box was wet or that it was raining on the Premises on the date of the Incident. Specifically, Plaintiff's expert testified that, "[a]ccording to Weather Underground, there was approximately an inch of rainfall in the vicinity of Broward County" on the date of the Incident. Kahn Depo. at 153. However, he did not know whether there was any rainfall at the Premises on the date of the Incident. *Id.* at 154. On the other hand, Plaintiff, who lives very close to the Premises, *see* SMF ¶ 3 (undisputed), clearly testified that while she thought it was going to rain because it was dark outside, it had not rained, and she did not recall seeing any water on the Collection Box or the street. PL Depo. at 25, 54-55. Thus, even if the Collection Box being wet

could have qualified as a dangerous condition (which Plaintiff has not shown and does not appear to presently argue), there is no more than a scintilla of evidence to show that it rained on the Premises on the date of the Incident or that the Collection Box was wet at the time of the Incident. In fact, Plaintiff's testimony disproves her "wet mail box" allegation.

Notwithstanding the allegations of the Amended Complaint, Plaintiff's summary judgment response seems to focus on general maintenance issues at the Premises that Plaintiff contends USPS had knowledge of and that Plaintiff contends *could* have caused the Collection Box to become electrified. While Plaintiff's testimony constitutes sufficient evidence upon which a reasonable factfinder could find that Plaintiff felt some type of shock when she touched the Collection Box, it is not enough on its own to show that the Collection Box was the source of that shock or that the Collection Box was in fact electrified.

At any rate, the only evidence in the record is that USPS had no actual or constructive notice of the Collection Box ever becoming electrified or posing a danger. In other words, USPS had no actual or constructive notice of the dangerous condition at issue here. As discussed above, the Collection Box has no electrical components and no purposeful connection to any source of electricity. Additionally, nobody other than Plaintiff has ever reported being shocked by the Collection Box, which is generally used by 50-100 customers per day. In fact, the customer service manager on the date of the Incident – who has been employed by USPS since 2001, Walker Decl. ¶ 1 – has never heard of anyone else being shocked by any USPS collection box, and there is no evidence in the record of even a single similar incident (at the Premises or any other USPS location). Moreover, USPS employees retrieved mail from the Collection Box both a few hours before the Incident and a couple hours after the Incident without any type of shock occurring, and employees also inspected the Collection Box after Plaintiff reported receiving a shock, but they

did not discover any issues with the Collection Box. Furthermore, even assuming the Collection Box was electrified at the time of the Incident, Plaintiff fails to identify evidence to suggest the length of time that the Collection Box was electrified. *Cf. Espinoza v. Target Corp.*, 843 F. App'x 168, 171 (11th Cir. 2021) ("If a plaintiff does not identify evidence to suggest the length of time that a liquid was on the floor, there is no genuine dispute of material fact, and a defendant is entitled to summary judgment."). Simply stated, there is no evidence showing that the issues with the Collection Box that Plaintiff complains of existed for a sufficient length of time that USPS, through ordinary care, should have discovered such issues.

As to the general maintenance issues Plaintiff asserts existed, her response states that the following issues *could* have caused the Collection Box to become electrified: (1) stray wires and an abandoned conduit were found in the ground; (2) bare wiring was found in Pole 8; (3) at least four poles were full of leaves, plastic, and other debris; and (4) other issues with lighting existed.[5] Ultimately, Plaintiff contends that USPS had a history of disrepairs and that USPS knew of these issues. While Plaintiff contends that these issues potentially caused the Collection Box to become electrified, she concedes that she cannot pinpoint one specific cause and that she has to rely on circumstantial evidence.[6] But she has not shown that she has evidence to establish that the foregoing maintenance issues are "dangerous conditions" that more likely than not caused the Incident or that such conditions were present on the date of the Incident. In fact, Plaintiff's expert acknowledged that he could not say what issue(s) more likely than not caused the Collection Box

---

[5] Plaintiff's response in particular includes a block quote from a January 25, 2019 invoice that references "11 pole light fixtures not working," bare wiring in a pole, leaves and debris in poles, and other issues. [DE 42] at 9. However, by January 24, 2019 (more than 6 months before the Incident), that same invoice indicates that all 11 light poles had been repaired, that leaves and debris were removed, and that other issues were remedied. [DE 40-5] at 47.

[6] *Cf. Espinoza*, 843 F. App'x at 172 ("There is no evidence as to the specific source of the leak, which would tend to show how long a dangerous condition was present.").

to become electrified, and he did not know whether the issues he identified existed on the date of the Incident.[7] *See* Kahn Depo. at 90, 97-102, 105.[8] Notably, although "[a]ll reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, [] an inference based on speculation and conjecture is not reasonable." *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013) (citation omitted). Having failed to present evidence that the issues Plaintiff asserts could have caused the dangerous condition – the alleged electrification of the Collection Box – existed on the date of the Incident, it follows that Plaintiff has not pointed to evidence to show that Defendant even had actual or constructive notice of such issues at the time of the Incident (let alone actual or constructive notice of the dangerous condition itself).

Given that Plaintiff cannot show that the foregoing issues were dangerous conditions that caused the Collection Box to become electrified, and given that there is no evidence showing USPS had actual or constructive notice of the Collection Box becoming electrified, Plaintiff will not be able to introduce evidence at trial upon which a reasonable factfinder could find that USPS had actual or constructive notice of the dangerous condition. Because Plaintiff has not provided "'competent evidence of actual or constructive knowledge by [USPS] of the dangerous condition' summary judgment is warranted." *Cabrera v. Macy's Fla. Stores, LLC*, No. 20-24173-CIV, 2022 WL 1642762, at *3 (S.D. Fla. Mar. 31, 2022) (citation omitted)).

---

[7] Throughout her response, Plaintiff claims that Defendant failed to preserve the Premises and spoliated evidence, but Plaintiff does not explain – or cite any law to explain – how her claims of spoliation (even if true) affect the legal analysis here. Nor has she shown that Defendant spoliated evidence as a matter of law.

[8] Notably, the primary source of evidence Plaintiff relies on in her response to the SMF to attempt to resist summary judgment is the deposition testimony of her expert. But his testimony does nothing to establish that Defendant had actual or constructive notice of the alleged dangerous condition.

## CONCLUSION

For the reasons discussed above, it is **ORDERED** and **ADJUDGED** that the Motion [DE 39] is **GRANTED**.[9]  The Court will enter a separate Final Judgment.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 22nd day of February 2023.

Jared M. Strauss
United States Magistrate Judge

---

[9] The March 1, 2023 hearing on the Motion is CANCELED.